IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Government Employees Insurance Company, | |
| *Plaintiff,* | Case no. 3:22-cv-793 |
| v. | |
| Clearcover Insurance Company, Clearcover Insurance Agency, LLC, *and* Mr. Matthew Brennan, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT

Plaintiff Government Employees Insurance Company ("GEICO") states the following Complaint against defendants Clearcover Insurance Company, Clearcover Insurance Agency, LLC, and Mr. Matthew Brennan (collectively, "Defendants"):

### NATURE OF THE CASE

1. This is an action for misappropriation of trade secrets under the federal Defend Trade Secrets Act and breach of confidentiality and non-disclosure agreements.

2. GEICO competes against defendants Clearcover Insurance Company and Clearcover Insurance Agency, LLC (together, "Clearcover") in the personal automobile insurance market. In his final days as a business intelligence supervisor at GEICO, and just before starting a similar position at Clearcover, Mr. Brennan absconded with GEICO's highly confidential business information, including approximately 1,600 trade secret computer program source code files implementing GEICO's proprietary insurance policy pricing algorithm.

3.        GEICO's pricing algorithm is among its most valuable and closely guarded trade secrets in the highly competitive personal automobile insurance market.  Only GEICO employees who require access in connection with their official job responsibilities, fewer than 5% of employees, have access to information about GEICO's pricing algorithm, and all of those employees are required to sign and reaffirm a confidentiality agreement annually.  As a supervisor in GEICO's business intelligence unit, Mr. Brennan was entrusted with especially broad access to details of GEICO's pricing algorithm and the associated computer program source code.

4.        When confronted by GEICO, Mr. Brennan admitted to taking GEICO's trade secret source code files and posting them to the GitHub website.  Mr. Brennan now claims to have taken down and deleted the files, but GEICO has no confidence that Mr. Brennan has not retained another copy of the source code, retained other confidential GEICO business information, shared GEICO's trade secret source code and confidential business information with his new employer, co-defendant Clearcover, or used them in the course of his ongoing work for Clearcover.  GEICO's concerns are heightened because Clearcover also recently poached a senior actuarial manager, another employee with especially sensitive knowledge about GEICO's pricing algorithm, forming a pattern and evidencing Clearcover's intent to accelerate the growth and profitability of its directly competing insurance business by improperly "hiring" confidential pricing know-how from GEICO.

5.        GEICO, therefore, files this action and seeks the Court's assistance to ensure, as best can be ensured, that all of its trade secret source code and confidential business information taken and retained by Mr. Brennan are returned and not exploited by Clearcover or anyone else.

## THE PARTIES

6. Plaintiff Government Employees Insurance Company ("GEICO") is organized under the laws of Nebraska and has its corporate headquarters and principal place of business at 5260 Western Avenue in Chevy Chase, Maryland. GEICO is authorized to transact business in Virginia and maintains multiple offices within this judicial district.

7. Defendant Clearcover Insurance Company is organized under the laws of Illinois and has its principal place of business at 33 West Monroe Street, Suite 500, in Chicago, Illinois. Clearcover Insurance Company is authorized to transact business in Virginia and maintains a registered office within this judicial district at 250 Browns Hill Court in Midlothian, Virginia.

8. Defendant Clearcover Insurance Agency, LLC, is organized under the laws of Delaware and has its principal place of business at 33 West Monroe Street, Suite 500, in Chicago, Illinois. Clearcover Insurance Agency, LLC, is authorized to transact business in Virginia and maintains a registered office within this judicial district at 250 Browns Hill Court in Midlothian, Virginia.

9. Defendant Matthew Brennan is a natural person who, upon information and belief, resides within this judicial district in Virginia Beach, Virginia.

## JURISDICTION AND VENUE

10. This action arises under the federal Defend Trade Secrets Act and, more particularly, under 18 U.S.C. § 1836(b).

11. This Court has original and subject matter jurisdiction over GEICO's federal Defend Trade Secrets Act claim under 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over GEICO's claims for breach of contract under 28 U.S.C. § 1367 because they are so related to the federal question claim over which the Court has

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Clearcover Insurance Company and Clearcover Insurance Agency, LLC, because both are registered to do business in Virginia and maintain a registered office within this judicial district. Moreover, GEICO's claims against Clearcover arise from its business within Virginia, including the hiring and employment of its co-defendant, Mr. Brennan.

13. This Court has personal jurisdiction over Mr. Brennan because he is a resident of Virginia. GEICO's claims against Mr. Brennan arise from his activities in Virginia, including his application for and ongoing employment with Clearcover.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Virginia and under § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## GEICO AND ITS TRADE SECRET PRICING ALGORITHM

15. GEICO is a leading provider of automobile insurance in the United States. GEICO began doing business in 1936, initially offering insurance exclusively to federal government employees. In 1958, GEICO expanded its customer base and began servicing the general public. GEICO currently offers, advertises, and sells insurance throughout the United States, including in Virginia.

16. GEICO is the second largest private-passenger automobile insurance provider and the largest direct marketer of automobile insurance in the United States. In addition to automobile and motorcycle insurance, GEICO and its affiliates sell many other diverse insurance products, including homeowners and business insurance. GEICO places great emphasis on

customer service and, in 1980, became the first automobile insurer to provide 24-hour customer service.  GEICO is accessible 24 hours per day, 365 days per year, through its official website at https://www.geico.com ("GEICO Website").

17. The personal automobile insurance market is highly competitive.  GEICO has distinguished and established itself as a market leader by offering high-quality insurance products at an affordable price.  GEICO's ubiquitous "15 minutes could save you 15% or more" slogan embodies GEICO's commitment to offering industry-leading rates without sacrificing coverage or customer service.

18. Quotes for GEICO insurance products are based on a proprietary pricing algorithm that considers a wide range of factors, including demographics, geography, vehicle make/model, and driving and claims history.  How to balance these factors and arrive at a highly competitive quote while remaining profitable is among GEICO's most closely held trade secrets.

19. Only GEICO employees who require access in connection with their official job responsibilities, fewer than 5% of employees, have access to information about GEICO's pricing models.  Even fewer employees have access to the technical details of the pricing algorithm and the underlying computer program source code.  Every employee with access to GEICO's confidential business information, including its trade secret pricing algorithm and source code, is required to sign a confidentiality agreement as a condition of employment at GEICO and to reaffirm that confidentiality obligation annually.

20. GEICO's trade secret pricing algorithm is implemented in computer software and consists of more than one thousand source code files, which are maintained in a secure source code repository.  Only the very few GEICO employees whose official job responsibilities require access to the source code files are granted access to the source code repository.

## MR. BRENNAN'S EMPLOYMENT, RESIGNATION, AND
## THEFT OF GEICO'S TRADE SECRET SOURCE CODE

21. Mr. Brennan began working for GEICO in 2016. Over the next six years, he held several systems analyst and software development positions of increasing seniority and responsibility. In mid-2022, Mr. Brennan was made a supervisor within GEICO's business intelligence unit. In that capacity, Mr. Brennan was one of the very few GEICO employees with access to the computer program source code for GEICO's trade secret pricing algorithm.

22. Mr. Brennan was suspended for ten days from October 7th to 17th of 2022 for misusing his access to GEICO's computer systems to identify employees recently laid off.

23. Mr. Brennan tendered his resignation on November 4, 2022, and gave two weeks' notice. GEICO terminated Mr. Brennan's employment on November 8, 2022.

24. Unbeknownst to GEICO at the time, Mr. Brennan uploaded source code files implementing GEICO's trade secret pricing algorithm to GitHub on November 7, 2022, three days after submitting his resignation. Upon information and belief, Mr. Brennan intended to keep the source code files for GEICO's trade secret pricing algorithm after leaving GEICO so he could use them in connection with his new employment at Clearcover.

25. On December 2, 2022, the cybersecurity team at GEICO was alerted to the presence of GEICO source code files on GitHub, an online source code repository. GEICO immediately launched an investigation and, within ninety minutes, determined that the source code files related to GEICO's trade secret pricing algorithm.

26. GEICO contacted Mr. Brennan by telephone that same afternoon and demanded that he remove GEICO's source code files from GitHub. Mr. Brennan purported to remove GEICO's source code from GitHub later that afternoon.

27. On December 5, 2022, GEICO sent a follow-up cease-and-desist letter to Mr. Brennan. Two days later, on December 7th, Mr. Brennan returned a signed but unsworn certification that all confidential GEICO data in his possession had been destroyed.

28. Clearcover's recent pattern of poaching GEICO employees from highly sensitive positions, particularly those with broad access to details of GEICO's pricing algorithm, evidences an intent to unlawfully acquire and exploit GEICO's confidential information, including its trade secret pricing algorithm, to accelerate the growth and profitability of Clearcover's directly competing business. GEICO seeks the Court's assistance to ensure, as best can be ensured, that all of its trade secret source code and other confidential business information taken and retained by Mr. Brennan are returned and not exploited by Clearcover or anyone else.

**COUNT ONE – BREACH OF CONTRACT**
**(against defendant Matthew Brennan only)**

29. GEICO incorporates by reference the allegations stated in Paragraphs 1 through 28 above as though fully stated here.

30. Mr. Brennan electronically signed a GEICO Confidentiality Agreement on June 17, 2022. By signing the Confidentiality Agreement, Mr. Brennan acknowledged that "GEICO operates in a highly competitive industry, and it is critical for GEICO to preserve and protect its Confidential Information (as defined below)."

31. The Confidentiality Agreement defined "Confidential Information" as "non-public information of a confidential or proprietary nature, including but not limited to marketing plans, product plans and information, business strategies and analysis, financial information, forecasts, personnel information, customer or consumer information, including personally-identifying information, and trade secrets."

32. By signing the Confidentiality Agreement, Mr. Brennan agreed, "both during the time employed by GEICO and thereafter, to keep and hold all Confidential Information in strict confidence and trust, and not to use or disclose any Confidential Information except within GEICO as may be needed to perform [his] job…."

33. Mr. Brennan also agreed that "upon the termination of [his] employment with GEICO, [he] will not take any property, copies of work, or any other GEICO related documents or materials, whether in electronic or physical form, including Confidential Information, and [he] will promptly return to GEICO all documents, materials or property in their possession related to GEICO, regardless of where they are stored, excluding documents or correspondence addressing [his] own employment (e.g., [his] performance, job posts, commendations, corrective or disciplinary actions, complaints)."

34. Mr. Brennan acknowledged that "any breach or threatened breach" of the Confidentiality Agreement would "result in irreparable harm" to GEICO and that "GEICO will be entitled to injunctive relief to enforce" the Confidentiality Agreement.

35. Despite reaffirming his contractual confidentiality obligation owed to GEICO only a few months prior, Mr. Brennan breached his Confidentiality Agreement by disclosing Confidential Information, as defined in the Confidentiality Agreement, to unauthorized individuals and entities outside of GEICO, by using Confidential Information beyond the scope of his employment, and by taking and retaining Confidential Information after the termination of his employment at GEICO.

36. Mr. Brennan's breach of his Confidentiality Agreement with GEICO has caused and will continue to cause damage to GEICO in an amount to be determined at trial and irreparable harm to GEICO for which there is no adequate remedy at law.

## COUNT TWO – BREACH OF CONTRACT
### (against the Clearcover defendants only)

37. GEICO incorporates by reference the allegations stated in Paragraphs 1 through 36 above as though fully stated here.

38. Clearcover and GEICO executed a Mutual Confidentiality and Non-Disclosure Agreement on April 12, 2022.

39. The Mutual Confidentiality and Non-Disclosure Agreement broadly defined "Confidential Information" as "all tangible and intangible (including the unaided memory) information or material concerning a party's business and/or operations which is disclosed by [one] party or otherwise made available or accessible to the other party regardless of the manner or medium of disclosure or access (e.g., visual, oral, written, electronic) that is described or marked as proprietary or confidential or which a reasonable person would consider as proprietary or confidential."  The definition continued, "Confidential Information shall include, but is not limited to … trade secrets, know-how, formulas, processes, algorithms, … proprietary information, … financial and operation information, … [and] all other non-public information…."

40. Clearcover acknowledged that "[GEICO] may suffer irreparable harm if [Clearcover] fails to comply with its obligations" under the Mutual Confidentiality and Non-Disclosure Agreement and "further agree[d] that monetary damages may be inadequate to compensate [GEICO] for any such breach."  "Accordingly, [Clearcover] agree[d] that [GEICO] will, in addition to any other remedies available to it at law or in equity, be entitled to seek injunctive relief or other equitable relief to remedy any breach or threatened breach by [Clearcover]."

41. Clearcover knew or should have known that the computer program source code for GEICO's trade secret pricing algorithm, which Mr. Brennan improperly retained after leaving GEICO and beginning his employment at Clearcover, was proprietary or confidential to GEICO and, therefore, fell within the scope of its Mutual Confidentiality and Non-Disclosure Agreement with GEICO.

42. The computer program source code for GEICO's trade secret pricing algorithm is not necessary for the Purpose of the Mutual Confidentiality and Non-Disclosure Agreement and Clearcover does not have and has never had any legitimate reason to solicit, possess, or use the computer program source code for GEICO's trade secret pricing algorithm.

43. Upon information and belief, Clearcover, at least through the actions of its employee, Mr. Brennan, used GEICO's Confidential Information, as defined in the Mutual Confidentiality and Non-Disclosure Agreement, in breach of that Mutual Confidentiality and Non-Disclosure Agreement.

44. Clearcover's breach of its Mutual Confidentiality and Non-Disclosure Agreement with GEICO has caused and will continue to cause damage to GEICO in an amount to be determined at trial and irreparable harm to GEICO for which there is no adequate remedy at law.

### COUNT THREE – TRADE SECRET MISAPPROPRIATION
### 18 U.S.C. § 1836(b)
### (against all defendants)

45. GEICO incorporates by reference the allegations stated in Paragraphs 1 through 44 above as though fully stated here.

46. GEICO proprietary pricing algorithm and the computer program source code complementing it are trade secrets as defined in the federal Defend Trade Secrets Act.

47. GEICO has taken reasonable measures to maintain the secrecy of its pricing algorithm, including limiting access to the very few employees who require access to perform their official job responsibilities, requiring all employees with access to execute and annually reaffirm a Confidentiality Agreement, and storing the associated computer program source code in a secure repository.

48. GEICO's proprietary pricing algorithm and the associated computer program source code derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  More particularly, the algorithm enables GEICO to determine rates for prospective policyholders that are both highly competitive and yet still profitable.

49. GEICO uses its proprietary pricing algorithm and the associated computer program source code in interstate commerce by providing rate quotes to prospective policyholders across the United States through the GEICO Website.  GEICO actively markets, quotes, and sells insurance products in all fifty states at rates determined by its proprietary pricing algorithm.

50. Upon information and belief, Mr. Brennan misappropriated GEICO's trade secrets, including at least its proprietary pricing algorithm and the associated computer program source code, by using them for the benefit of his new employer, Clearcover, in breach of his duty to maintain the secrecy of GEICO's trade secrets.

51. Upon information and belief, Clearcover misappropriated GEICO's trade secrets, including at least its proprietary pricing algorithm and the associated computer program source code, by using improper means to acquire knowledge of GEICO's trade secrets, namely by

inducing Mr. Brennan to breach his Confidentiality Agreement with GEICO and by using GEICO's trade secrets for its own business purposes with reason to know that Mr. Brennan owed GEICO a duty to maintain their secrecy.

52. Upon information and belief, Defendants' misappropriation of GEICO's trade secrets was willful and malicious, entitling GEICO to exemplary damages under 18 U.S.C. § 1836(b)(3)(D).

53. Defendants' misappropriation of GEICO's trade secrets has caused and will continue to cause damage to GEICO in an amount to be determined at trial and irreparable harm to GEICO for which there is no adequate remedy at law.

## DEMAND FOR JURY TRIAL

GEICO demands a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

GEICO respectfully requests the following relief:

A. Entry of judgment in favor of GEICO and against Clearcover and/or Mr. Brennan on all counts of this Complaint.

B. Preliminary and permanent injunctions enjoining Clearcover and Mr. Brennan and each of their successors, assigns, officers, partners, agents, contractors, employees, attorneys, affiliates, licensees, subsidiaries, and all others acting in concert with them from:

    (i) Disclosing, copying, publishing, distributing, adapting, describing, summarizing, and making any business use whatsoever of the confidential GEICO documents and files, both hardcopy and electronic, obtained by Mr. Brennan in the course of his employment at GEICO;

    (ii)    Disclosing, copying, publishing, distributing, adapting, describing, summarizing, and making any business use whatsoever of computer program source code authored or obtained by Mr. Brennan in the course of his employment at GEICO; and

    (iii)    Assisting, aiding, or abetting any other person or entity in performing any of the above acts.

C.    An award of monetary damages in an amount to be determined at trial, including:

    (i)    Actual loss suffered by GEICO plus unjust enrichment enjoyed by Clearcover and Mr. Brennan;

    (ii)    If GEICO's actual loss or Defendants' unjust enrichment cannot be readily quantified, a reasonable royalty for Defendants' unauthorized disclosure and use of GEICO's confidential information and trade secrets;

    (iii)    An award of exemplary damages equal to two times the amount of damages awarded under Paragraphs (C)(i) or (ii) above; and

    (iv)    An award of GEICO's reasonable costs and attorneys' fees.

D.    Such other and further relief as the Court deems appropriate.

Date: December 19, 2022

Respectfully submitted,

    /s/ Matthew J. Ricciardi

Matthew J. Ricciardi, Esq. (88927)
   mricciardi@hunton.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 955-1500
Fax: (202) 778-2201

*Counsel for Government Employees Insurance Company*